(No. 22582.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD DEAL *et al.* Plaintiffs in Error.

*Opinion filed October 22, 1934.*

F. M. GUINN, and LESTER WRIGHT, for plaintiffs in error.

OTTO KERNER, Attorney General, PAUL TAYLOR, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiffs in error, Harold Deal and Clarence Lemmons, (hereinafter called the defendants,) were by an indictment returned by a grand jury of Effingham county charged with the crime of robbery while armed with a

dangerous weapon. They were tried by a jury, which returned a verdict of guilty. The motions for new trial and in arrest of judgment interposed by them were severally overruled and they were sentenced to the Illinois Reformatory at Pontiac for the indeterminate sentence fixed by the statute. To reverse the judgment of conviction they have sued out this writ of error.

Numerous errors are assigned, but those most earnestly urged are, (1) that the trial court admitted incompetent and prejudicial evidence; and (2) that the State's attorney in his argument to the jury made improper statements calculated to arouse, and which did arouse, the passions and prejudices of the jury against the defendants.

The defendants are young men residing with their parents in Vandalia. Altamont is about twenty miles east of Vandalia, on Route 40. Leroy Martin was an attendant at a gasoline filling station located on Route 40, at Altamont. About 8:55 of the night of October 16, 1933, two men, each with a revolver in his hand, entered the office of the station, where Martin then was. The shorter man commanded Martin to stick up his hands and ordered him to turn out the lights, which Martin did, with the exception of the lights in the canopy outside the office. The taller man then took the money-changer, which was strapped about Martin's body, from him, and also took two one-dollar bills out of a pocket in his overalls. The money-changer contained about $5.90. While the robbery was in progress, Martin's sister, Katherine, drove up to the station. On her arrival one of the robbers left the office, met her, pointed a revolver at her and directed her to come inside. The robbers forced her and Martin into the washroom, commanded them to stay there, placed a chair against the outer door and then left in an automobile. The evidence tended to show the automobile was a Ford and that it was driven west from Altamont. The money-changer was later found in a field between Altamont and Vandalia.

The defense interposed was an alibi. Each of the defendants testified in his own behalf, denied any connection with the robbery, and purported to detail his whereabouts on the evening and night in question. There was evidence tending to support the testimony of each defendant that he was in Vandalia at the time the robbery occurred. Inasmuch as the case must be again tried, we refrain from expressing any opinion upon the weight of the testimony of any of the witnesses.

The case turns on the question of identity. Martin testified that he positively identified the defendants as the persons who committed the robbery. While on cross-examination his sister stated that she was likewise positive that the defendants were the robbers, yet she further stated, in substance, that her identification was limited to her opinion that the defendants were the robbers. Martin testified he identified the defendants in the jail at Greenville, where they were then imprisoned, after the robbery. So far as the record discloses, Katherine did not see either of the defendants after the robbery until they were in jail in Effingham. She and Martin both admitted that they had not seen either of the men before the night of the robbery. It is rather difficult to accurately tell from the record about the identification of Deal by Martin. He said on one occasion that Deal was brought out by himself for identification. He later testified that they (apparently referring to the sheriff's force) brought some men out and that he picked Deal out from amongst the men; also that at the Effingham jail Deal was brought out by himself. Martin also saw Lemmons a few days after the robbery, in the jail at Greenville. The sheriff of Bond county had told Martin that he (the sheriff) had Deal in jail there. The method of identification of Lemmons is also not clear from the record. We said in the case of *People* v. *Crane,* 302 Ill. 217, on page 223: "Where one under arrest is brought alone before persons who are present for the pur-

pose of identifying an assailant and who know that the person arrested is to be brought before them for identification, it is not unlikely that such surrounding circumstances might influence one who seeks to identify an assailant. Certain it is that such an identification cannot be given the same weight and credibility as where the witness had picked out the assailant from a number of persons unknown to her." What we there said was approved by this court in *People* v. *DeSuno,* 354 Ill. 387.

An attendant at a gasoline station at Mulberry Grove was robbed by two men at about 11:45 P. M. on the same night the robbery was committed at Altamont. Mulberry Grove is in Bond county and about ten or twelve miles west of Vandalia, on Route 40. The evidence shows that the two defendants were arrested, charged with the robbery, held in the jail at Greenville and tried for that robbery. While the evidence was not placed before the jury that the defendants were found not guilty of that robbery, yet certain instruments filed in connection with the motion for new trial show that they were tried for the robbery of the attendant of the oil station at Mulberry Grove in the circuit court of Bond county on February 26, 1934, and found not guilty. The trial of the present case commenced on the 29th of March.

The defendant Deal was asked on his cross-examination if it was not a fact that between 11:00 and 12:00 o'clock of the night of October 16 he was at Mulberry Grove, and if he did not see a boy, Lester McDaniels, there between 11:00 and 12:00 o'clock that night, and whether he did not see certain people at Durr's restaurant about 7:30 P. M. on that same night. Deal denied that he was in Mulberry Grove on either of the occasions about which he was interrogated. The defendant Lemmons was asked substantially the same questions on his cross-examination and likewise denied that he was in Mulberry Grove at any time in the evening or night of October 16. In rebuttal the

People produced the testimony of different witnesses tending to identify the defendants, who with two other men were in Durr's restaurant about 7:30 P. M. on October 16.

Lester McDaniels testified that he was the attendant at the filling station and restaurant operated by Albert Durr in Mulberry Grove on the night of October 16, and that about 11:45 P. M. the two defendants entered the place and robbed him. This testimony was objected to. The court overruled the objection. McDaniels not only related the fact of seeing the two defendants in the filling station, but over the objection of the defendants was permitted to state that the taller of the defendants commanded him to go in the back room, which he did; that said defendant (Deal) followed him there, felt of his clothing, and then struck him on the head with some steel instrument, knocking him down; that after he was prostrate a watch was taken from his pocket, and that he lay there on the floor, confused, until a man named McMasters came in. McDaniels had seen neither of the defendants before the occasion testified about. He stated that in his opinion the defendants were the men who robbed and assaulted him.

Jim McMasters testified to finding McDaniels lying on the floor in the filling station, and over the objection of the defendants was permitted to state that McDaniels appeared to be unconscious and was lying in a pool of blood. The witness testified that he was acquainted with both the defendants and had known them for some time prior to October 16. He further testified that John Miller was with him when he drove up to the filling station and that the witness saw the defendants leave the station and then and there recognized each of them. McMasters further testified that on finding McDaniels he immediately called the night watchman by telephone and told him· the restaurant and gasoline station had been held up. He also saw and talked to the night watchman that night and described to him the appearance of the men, but he did not tell the

officer that he recognized the defendants as the men whom he had seen coming from the gasoline station, nor did he tell Durr, the proprietor of the station, until Saturday night following the robbery, which occurred on Monday, that the defendants were the men whom he had seen leaving the station. He said that he had talked to lots of people in the meantime and given a description of the men seen on that occasion. He also stated that he had no reason to shield the defendants.

In passing on the objections made, the court stated that the evidence was admitted for the purpose of identification, only, and was limited to that purpose.

During the course of his closing argument the State's attorney made the following statement: "The defendants robbed the Altamont station. They did not get as much money by that robbery as they expected and they then went to Mulberry Grove to rob a station there." He further stated "that the defendants drove to Mulberry Grove between the hours of 11:00 and 12:00 o'clock and made a deadly assault upon the person in charge of the filling station at said Mulberry Grove." These statements were objected to. The court ruled that such evidence was admitted only for the purpose of rebutting the testimony of the alibi but did not instruct the jury to disregard such statements. The State's attorney further said to the jury in his closing argument, "that if they did not convict the defendants, or should acquit them, that their verdict would be taken by the people of Effingham county as an evidence that it was not possible to convict anybody in Effingham county for highway robbery." He also said: "If you find these defendants not guilty and people come to my office to make complaints against men for highway robbery, I will have to say to them that juries in Effingham county will not convict men for highway robbery."

It is urged on behalf of the People that the testimony relative to the robbery at Mulberry Grove was competent

as tending to dispute the evidence of the alibis offered by the defendants. There was no connection between the crimes committed at Mulberry Grove and at Altamont. The crimes did not occur in the same immediate locality. The robberies were not committed about the same time of the night. The two places are at least thirty miles apart. It was competent to show, in contradiction of the testimony of the defendants and of their evidence of an alibi, that they were in Mulberry Grove on the occasion in question, but it was not necessary to show that another crime was committed at the time it was claimed the defendants were in Mulberry Grove, and it was highly prejudicial and erroneous to admit the evidence that the attendant at the station of Mulberry Grove was maliciously assaulted and that he was lying unconscious in a pool of blood. Even where the evidence of another crime is competent, the details attendant upon the commission of such offense are not competent. (*People* v. *Allen*, 321 Ill. 11.) The general rule is, that evidence that a defendant has committed another crime wholly independent of or disconnected from the one for which he is being tried is not admissible. (*People* v. *Brewer*, 355 Ill. 348; *People* v. *Allen, supra; People* v. *Swift*, 319 Ill. 359; *People* v. *Cassler*, 332 id. 207; *People* v. *King*, 276 id. 138; *People* v. *Gibson*, 255 id. 302.) It is only the occasional exception that proof of another crime not connected with the particular crime can be shown against the defendant. (*People* v. *Brewer, supra.*) The test of admissibility of evidence of another offense is whether it fairly tends to prove the particular offense charged. (*People* v. *Swift, supra; People* v. *Jennings*, 252 Ill. 534; *Farris* v. *People*, 129 id. 521.) The robbery at Mulberry Grove was a separate and distinct offense and could not be proved in support of a prosecution for the offense committed at Altamont. It is obvious that the crime at Mulberry Grove had no relation to the crime charged against the defendants as being committed

357—41

by them at Altamont. The testimony was not only irrelevant but was highly prejudicial to the defendants. A defendant is entitled to a trial in accordance with the law of the land. That means a fair and impartial trial, free from prejudicial, incompetent evidence. The proper administration of the law requires that a defendant in a criminal case shall not be convicted upon incompetent evidence prejudicial to his rights. (*People* v. *Gardiner*, 303 Ill. 204; *People* v. *Simmons,* 274 id. 528; *People* v. *Jordan*, 292 id. 514.) There was a conflict in the evidence upon the question of the guilt of the defendants. In order to sustain a verdict of guilty it must appear that the record is free from material and substantial error. *People* v. *Green*, 292 Ill. 351; *People* v. *Ahrling*, 279 id. 70; *People* v. *Jacobs,* 243 id. 580; *Adams* v. *People,* 179 id. 633.

While it is possible that the State's attorney did not know that the defendants had been found not guilty of the robbery of the station at Mulberry Grove, yet it was very unusual if he was ignorant of that fact. Regardless of whether he had knowledge that the defendants had been tried and found not guilty of the robbery at Mulberry Grove, it was improper for him to tell the jury that the defendants went to Mulberry Grove and there made a deadly assault upon the person in charge of the filling station. The error in admitting the incompetent evidence was magnified by the argument of the State's attorney. His statement was further improper as not being a conclusion that he drew from the evidence but was an unqualified statement of his own that the defendants were guilty of the two robberies. While the State's attorney is permitted to, and should, argue his cause with zeal, yet he is not merely the attorney for the people. He owes a duty to the defendant as well as to the people to see that the defendant has a fair trial. He cannot in his argument resort to improper and inflammatory argument not justified by competent evidence, by making an appeal to the jury cal-

culated to arouse their prejudice and to secure thereby a verdict of guilty. (*People* v. *Russell*, 322 Ill. 295; *People* v. *Allen, supra; People* v. *Bimbo,* 314 Ill. 449; *People* v. *Black,* 317 id. 603.) The trial court should not only have sustained the objection to the remarks of the State's attorney, but should also have promptly instructed the jury orally, and in writing later, if requested, to disregard such statements in their consideration of the case. (*People* v. *King, supra.*) Even if that course had been followed in this particular case it would not have cured the error. The sustaining of objections to improper, prejudicial and inflammatory remarks, and instructing the jury to disregard such statements, do not, nor does the withdrawal or retraction by the speaker of such statements, always cure the error. Here there was no retraction of the improper statements nor an instruction by the court not to consider the statements. Human nature does not change merely because it is found in the jury box. The human mind is not a slate, from which can be wiped out, at the will and instruction of another, ideas and thoughts written thereon.

It is not necessary to determine whether the other quoted statements of the State's attorney constituted reversible error. The errors herein pointed out require a reversal of the judgment of conviction.

The judgment of the circuit court of Effingham county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*