THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL HAMILTON, Defendant-Appellant.

(No. 73-77;

Fifth District—March 20, 1975.

Paul Bradley, Kenneth L. Jones, and Gordon H. Berry, all of State Appellate Defender's Office, of Chicago, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

After a jury trial in the circuit court of Madison County the defendant was convicted of the crime of armed robbery and sentenced to a term of imprisonment of not less than 15 nor more than 30 years.

The indictment alleged that the defendant, while armed with a gun, took certain property from one Thomas Courtney at a Sunoco gasoline station in Madison County. The defendant was represented by retained counsel.

The victim of the alleged offense, Thomas Courtney, testified that he

was working as an attendant at the gasoline station in question on the morning of August 12, 1972. At about 1 A.M. on that morning a car stopped at the station and a man, identified by Courtney as the defendant, entered the station and asked for directions to the nearest motel. The man then pulled a revolver and pointed it at Courtney, ordered Courtney to open the cash register and took some money from the cash register. Courtney was then forced to enter an automobile. He sat on the passenger's side of the front seat, the gunman sat in the driver's seat, and a third man sat between them in the front seat. While the gunman drove the car, the other man, later identified as Alsbury, relieved Courtney of his watch, billfold and car keys. Courtney was set free a few minutes later along an interstate highway, and he immediately went to a gasoline station and called the police.

The State also called Gary Alsbury to testify. When Alsbury stated that he wished to consult with an attorney, the court appointed counsel to advise Alsbury. After conferring with appointed counsel, Alsbury stated that he was 18 years old and had been residing in the Fayette County Jail. The witness refused to answer subsequent questions, however, on the ground that the answers might tend to incriminate him. The trial court then granted the State's request to grant Alsbury immunity from prosecution. Alsbury then testified that he knew the defendant but that he did not remember whether he was with the defendant on August 12, 1972, or whether he was present when a man was taken from a Sunoco gasoline station by the defendant on that date. Alsbury also stated that "he was suppose to have been" involved in a holdup at the Sunoco station in question but that he could not remember the incident. The witness stated that he did testify at a prior court hearing regarding an armed robbery at a Sunoco station, but he stated that he did not remember being asked specific questions or giving specific answers.

The State called a court reporter who testified that People's exhibit no. 3 was a partial transcript of the defendant's first trial which resulted in a mistrial. The prosecutor offered the exhibit into evidence, defense counsel stated that he had no objection, and the court admitted the exhibit into evidence. The transcript included the testimony of Alsbury at the defendant's first trial. At that trial Alsbury testified that he and the defendant stopped at a gasoline station on a Friday night in mid-August 1972, that the defendant entered the station and subsequently forced the attendant to enter the front seat of the car, that he, Alsbury, took a wallet and some keys from the attendant, that the defendant threatened the victim with a gun and that the victim was set free along interstate highway 70.

After the State rested its case the defense called three witnesses who testified that the defendant was with them in a farmhouse near Ramsey, Illinois, at the time of the armed robbery in question. Harold McCoy then testified that he and Gary Alsbury committed the armed robbery at the Sunoco gasoline station on August 12, 1972. McCoy was an acquaintance of the defendant, having recently lived with him in the small cell block at the Madison County Jail. The defendant then testified in his own behalf and stated that he was with his alibi witnesses at the farmhouse near Ramsey, Illinois, at the time of the armed robbery in question. He also testified that he knew Gary Alsbury and that he was with Alsbury when they were arrested on August 16, 1972.

In rebuttal, the State called Thomas Courtney, the victim of the alleged offense. He stated that he had seen Harold McCoy for the first time in the courtroom when he, McCoy, testified for the defendant.

The defendant's first contention on appeal is that his conviction must be reversed because he was not proven guilty beyond a reasonable doubt. We disagree.

■■ It is the jury's province to judge the credibility of witnesses, to weigh the testimony and to determine matters of facts, and the determination of the jury will not be disturbed unless the evidence is so unsatisfactory as to justify a reasonable doubt of guilt. (*People v. Benedik*, 56 Ill.2d 306, 307 N.E.2d 382.) It is well established that a positive identification by one witness who has had an ample opportunity for observation is sufficient to support a conviction. (*People v. Rodgers*, 53 Ill.2d 207, 290 N.E.2d 251.) This is true even though the testimony of the eyewitness may be contradicted by the accused or by alibi witnesses. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631; *People v. Hodges*, 20 Ill.App.3d 1016, 314 N.E.2d 8.) The trier of fact, in this case the jury, is under no obligation to believe alibi testimony over positive identification of an accused even though given by a greater number of witnesses. *People v. Jackson*, 54 Ill.2d 143, 295 N.E.2d 462.

■■ In the instant case, the victim of the armed robbery made a positive identification of the defendant. He stated that the defendant was in the gasoline station for about 5 minutes and that the station was well lighted. The jurors were in a superior position to observe the demeanor of the witnesses. They obviously chose to believe the identification testimony of the victim, and they had the right to do so.

■■ The defendant also contends that the trial court erred in admitting into evidence the transcript of Gary Alsbury's testimony at the defendant's first trial. The transcript was admitted for the purpose of impeaching Alsbury's credibility. The fact that defense counsel specifically stated that he did not object to the introduction of the transcript into evidence,

however, is of utmost significance. It is well established that failure to object to the admission of evidence waives the objection and precludes consideration of the question on appeal. (*People v. Scott*, 52 Ill.2d 432, 288 N.E.2d 478; *People v. Nichols*, 21 Ill.App.3d 432, 315 N.E.2d 663.) This is a proper case for application of that rule.

■■ The defendant also contends that the prosecutor acted improperly in calling Gary Alsbury to testify knowing that Alsbury would exercise his constitutional right to refuse to incriminate himself. The defendant cites *Namet v. United States*, 373 U.S. 179, 10 L.Ed.2d 278, 83 S.Ct. 1151, and *United States v. Puntillo*, 440 F.2d 540 (7th Cir. 1971), for the proposition that reversible error may exist when a prosecution witness exercises his privilege to refuse to testify in two instances. The first such instance exists when the prosecutor acts improperly in making a conscious and flagrant attempt to build his case out of inferences from a witness' refusal to answer questions. The second instance exists when, in the circumstances of a given case, inferences from a witness' refusal to answer add critical weight to the prosecution's case in a form not subject to cross-examination. We find that the record does not support any inference of prosecutorial misconduct. The prosecutor did not make a conscious and flagrant attempt to build his case out of inferences from Alsbury's refusal to testify. The record does not suggest that the prosecutor was aware of the fact that Alsbury would refuse to testify. On the contrary, since Alsbury had testified at the defendant's first trial, the prosecutor may reasonably have believed that Alsbury would be willing to testify again. When the witness did exercise his testimonial privilege under the fifth amendment, the prosecutor moved that Alsbury be granted immunity and did not again refer to Alsbury's initial refusal to testify. Moreover, the witness did testify after being granted immunity. Consequently, no impermissible inferences could be drawn because the witness was not subject to cross-examination. *United States v. Puntillo.*

■■ The defendant next contends that the prosecutor made several improper remarks in his closing statement. The first statement complained of is the prosecutor's reference to the defendant's alibi witnesses as, "Big Momma Schallenberg and her clan." The defendant also alleges that the prosecutor acted improperly in referring to Gary Alsbury as "Miss Alsbury" and to Harold McCoy as "a twenty-three year old boy." It is significant that defense counsel did not object to any of the above statements. It is well settled that failure to make a timely objection to allegedly improper remarks by the prosecutor constitutes a waiver of the objection. (*People v. Skorusa*, 55 Ill.2d 577, 304 N.E.2d 630; *People v. Kelly*, 22 Ill.App.3d 111, 316 N.E.2d 777.) An appellate court can relax the waiver rule if it considers the remarks of the prosecutor to be seri-

ously prejudicial. (*People v. George*, 49 Ill.2d 372, 274 N.E.2d 26.) Even if the waiver rule is relaxed and the prosecutor's comments are found to be improper, the remarks will not constitute reversible error unless substantial prejudice results. *People v. McCorry*, 51 Ill.2d 343, 282 N.E. 2d 425.

■■ We do not believe that the prosecutor's comments mentioned above were likely to be seriously prejudicial to the defendant. The reference to the alibi witnesses as "Big Momma Shallenberg and her clan" was not of great significance. The defendant asserts that the reference to Gary Alsbury as "Miss Alsbury" and the reference to Harold McCoy as "a twenty-three year old boy" constitute an insinuation that the defendant was a homosexual. We disagree. The prosecutor referred to Alsbury as "Miss Alsbury" in a different context. The defendant's alibi witnesses had testified that the defendant was with them and a Mrs. Abernathy at the time of the armed robbery. The prosecutor, after referring to that testimony, stated, "I submit to you Mrs. Abernathy was Miss Alsbury." We believe that the jury was likely to have interpreted that statement as no more than an allegation that the defendant was with Alsbury rather than a Mrs. Abernathy on the evening in question. Similarly, the reference to McCoy did not refer to homosexuality and was not likely to have prejudiced the defendant.

The defendant also alleges that the prosecutor acted improperly in stating that the defendant had a "strange relationship" with Alsbury. When defense counsel objected to the comment the court sustained the objection and instructed the jury to disregard the remark. Generally, when the trial court sustains an objection to a statement made by the prosecutor in the closing argument and instructs the jury to disregard the statement, any error in the argument is cured. (*People v. Daugherty*, 43 Ill.2d 251, 253 N.E.2d 389; *People v. Parks*, 133 Ill.App.2d 348, 273 N.E.2d 162.) In any case, we believe that the remark was not likely to have seriously prejudiced the defendant.

For the foregoing reasons we find that, while the prosecutor's closing argument was not a model of perfection, it did not constitute reversible error.

■■ The defendant's final contention is that his sentence of 15 to 30 years is excessive and should be reduced. Armed robbery is a Class 1 felony (Ill. Rev. Stat., ch. 38, par. 18—2) for which the minimum term shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term. (Ill. Rev. Stat., ch. 38, par. 1005—8—1(c)(2).) The defendant maintains that a minimum sentence in excess of 4 years was not justified. We disagree. With regard to the nature

and circumstances of the offense in question, the victim testified that he was abducted and that the defendant had threatened to shoot him. These are serious aggravating circumstances. With regard to the history and character of the defendant, the presentence investigation prepared by the probation office reveals that the defendant has a lengthy list of prior felony convictions. The defendant was placed on probation for 5 years in 1959 after being convicted of the offense of burglary. In 1960 he was convicted by a Federal court of the offenses of interstate transport of a motor vehicle and of attempted escape. Two concurrent 3½-year sentences were imposed. In 1964 the defendant was sentenced to 5 years imprisonment by a Texas court after he was convicted of burglary, theft and robbery by assault. In 1967 three concurrent terms of 8 to 9 years were imposed on the defendant pursuant to convictions for burglary, armed robbery and escape. " '[W]here it is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, this court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of section 11 of article II of the Illinois constitution which requires that all penalties shall be proportioned to the nature of the offense.' " (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.) These principles were not violated in the instant case.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.