THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AUGUSTINE OLIVAS, a/k/a Augustin Olivos, Defendant-Appellant.

First District (4th Division)    No. 61253

Opinion filed June 23, 1976.—Rehearing denied September 15, 1976.

Jerome Rotenberg and Thomas J. Maloney, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Renee Golbus Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Augustine Olivas, was charged by indictment with possession of a controlled substance (heroin) in violation of section 402(a) of the Controlled Substances Act. (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a).) Subsequent to a jury trial, he was found guilty of the offense charged and sentenced to the Department of Corrections for a term of not less than 5 years nor more than 15 years. On appeal, the defendant seeks a reversal of his conviction on the bases that (1) his right to a fair trial was prejudicially denied as a result of the trial court's improper admission of evidence and argument relating to the issuance of a search warrant; (2) the trial court erred in admitting evidence of his other purported criminal activity; and (3) the State's closing argument was prejudicially improper in that the prosecutor not only insinuated improprieties on the part of defense counsel, but he also commented on facts that were not proven by the evidence.

A review of the record reveals that subsequent to a conversation on June 13, 1973, with an individual well known to them, Sergeant Richard McKelvey and Investigators Bernard Brown and James Hanrahan of the vice control division of the narcotics section of the Chicago police department conducted a 2-hour surveillance of the defendant's jewelry store located at 1039 West Belmont in Chicago, Illinois. During the course of this surveillance, these police officers observed a number of individuals, many of whom were personally known to them as a result of their official activities in the narcotics division, enter the store, engage in a

conversation with the defendant, and then give money to the defendant in return for some unidentifiable item that the latter would hand each individual.

On the following day, these police officers procured a search warrant for the defendant's premises. They thereupon proceeded to the jewelry store and conducted another surveillance of the locale. At approximately 6 p.m., they entered the store, identified themselves initially to an employee standing behind a counter in the front part of the store and then to the defendant who was situated in the storeroom of the jewelry shop. The defendant was presented with the search warrant and subsequent to being afforded time to read said document, he informed the police officers that they could search the store. Sergeant McKelvey and Investigator Hanrahan commenced searching the premises and uncovered a brown paper bag located in a shelf area above a work bench in the storeroom. This bag contained two large tin foil packages of tan powder which, after a field test was conducted, was ascertained to be heroin. The defendant was then placed under arrest and, upon being advised of his constitutional rights, voluntarily remarked, "Oh, my God, if I ever get out of this, I will never sell dope again."

On November 21, 1973, the defendant was indicted by the grand jury for knowingly and unlawfully possessing a controlled substance in violation of section 402(a) of the Controlled Substances Act. (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a).) Subsequent to entering a plea of not guilty to the offense charged, the defendant moved on October 31, 1974, to quash the search warrant and suppress the evidence on the basis that the affidavit of probable cause was insufficient. This motion was denied by the trial court on December 2, 1974, and the cause was set for trial on the next day.

After the jury was selected and both sides presented their respective opening statements, the State commenced its case-in-chief by eliciting testimony from Sergeant McKelvey and Investigator Brown regarding their involvement in the instant case. Besides recounting what transpired on the 13th and 14th of June, 1973, the police officers opined that the street value of the heroin seized from the defendant was between $750,000 to $1 million. Subsequent to the testimony of the above police officers, the State called Veronica Drantz, a chemist at the Chicago police department crime laboratory. She testified that the substance found on the day in question was heroin and that it weighed slightly more than 1.3 pounds.

Prior to the State resting its case, it sought to introduce into evidence various exhibits which comprised the tin foil packets, the heroin itself, and the search warrant and complaint for search warrant used by the instant police officers to investigate the defendant's premises. These latter two items of evidence prompted a colloquy between the trial court and

the counsels for the State and the defendant concerning the admissibility of such exhibits. Such discussion resulted in the trial court admitting the search warrant into evidence, but precluding the submission of said documents to the jury for its deliberations.

Subsequent to defense counsel eliciting testimony from the landlord of the store which the defendant rented as well as the latter's other attorney, the defendant took the stand in his own behalf. He stated that on June 14, 1973, approximately at 1 p.m., a man named Salvadore left the brown bag containing the heroin with him. Moreover, he testified that Salvadore, who had left packages with him on two prior occasions, informed him that someone would call for the package. He further related that he never opened the bag nor was he cognizant of what heroin looked like since he never sold or possessed drugs.

Besides testifying as to the reason for the bag being present in the jewelry store, the defendant unequivocally denied making the remark to the police officers at the time of his arrest that if he ever got out of this, he would never sell dope again. Rather, he informed the police that if he would go clear and free, he would "never hall [sic] any package for nobody." However, on cross-examination, it was brought out that the defendant acknowledged making the prior statement at the preliminary hearing.

Upon the conclusion of the testimony of the defendant, two character witnesses who were called in his behalf, and the rebuttal witnesses proffered by the State, counsels for the State and the defendant presented their respective closing arguments and the trial court instructed the jury. After a short deliberation, the jury returned a verdict finding the defendant guilty of the offense charged. The trial court then entered a judgment on the verdict and placed the defendant in the custody of the sheriff of Cook County. On December 26, 1974, the defendant filed a motion for a new trial which the trial court denied on January 13, 1975. On that date, the trial court sentenced the defendant to a prison term of 5 to 15 years. The defendant filed a notice of appeal on February 11, 1975, with the clerk of the circuit court of Cook County seeking a reversal of his conviction.

We first consider the defendant's contention that the evidence and argument relating to the issuance of a search warrant was improperly admitted and prejudicially denied him the right to a fair trial. In support of such assertion, the defendant maintains that commencing with the State's opening statement to the jury and progressing to the respective testimony elicited from Sergeant McKelvey and Investigator Brown, the jury was improperly permitted to hear evidence and argument relating to the fact that the police officers had appeared before a circuit court judge who issued a search warrant authorizing the search of the defendant's

jewelry store. The defendant argues that the obvious implication of such testimony to the jury was that the trial judge had made a prior determination that he had committed the offense for which he was charged. We are not in accord.

■■ It has uniformly been held that evidence concerning acts which are closely and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances is admissible. *(United States v. Sebo,* 101 F.2d 889, 891 (7th Cir. 1939).) Considering such tenet in light of the instant case, we believe that the various references throughout the trial to the issuance of a search warrant was so crucially intertwined with the police officers' surveillance of the premises as well as the defendant's arrest so as to form part of one chain of relevant circumstances. From our perusal of the record, we are convinced that the testimony elicited at trial concerning the issuance and execution of the search warrant solely demonstrated to the jury the formal procedure required of the law enforcement officials at bar before they could properly (1) engage in a lawful search of the defendant's jewelry store and (2) arrest the latter once they discovered the heroin in his premises. Moreover, the fact that the trial court granted defense counsel's motion to exclude the search warrant and the complaint for search warrant from jury deliberation and the State indicated in its closing argument to the jury that such documents were not really significant in their determination of the defendant's guilt or innocence further evinces the impropriety of the defendant's argument that he was prejudiced by the State's reference to the search warrant. Thus, based on the purpose underlying such evidence coupled with the respective conduct and closing comments of the trial court and counsel for the State, we believe that the controverted testimony and argument relating to the search warrant was not analogous to situations wherein a prosecutor either (1) renders a personal opinion as to whether or not the defendant committed an offense *(People v. Mostafa,* 5 Ill. App. 3d 158, 164-65, 275 N.E.2d 846, 850) or (2) comments on what charges should be filed against defendant as well as defendant's failure to testify *(People v. Blissitt,* 12 Ill. App. 3d 551, 554, 299 N.E.2d 562, 564) so as to warrant a reversal of his conviction.

We further do not subscribe to the defendant's assertion that the trial court erred in admitting evidence of other purported criminal activity. The stimulus for this basis of review centers on the fact that even though the defendant was charged and tried solely for the offense of possession of a controlled substance on June 14, 1973, the State was permitted over objection to introduce testimony to the jury inferring that the defendant was also guilty of the crime of selling a controlled substance on the previous day. To buttress such contention, the defendant cites the respective testimony elicited from Sergeant McKelvey and Investigator

Brown that, during the surveillance of the defendant's jewelry store, they saw a number of individuals enter the store, engage in a conversation with the defendant, hand some money to him in return for some unidentifiable item. Moreover, the defendant contends that the prejudice attributable to the officers' testimony was further ingrained in the mind of the jury by virtue of the State's closing argument which also inferred that he was involved in the sale of controlled substances. We are not persuaded by either assertion.

It is well settled in Illinois that evidence of offenses other than the one for which the accused is being tried is admissible if relevant for any purpose other than to show the individual's propensity to commit a crime. *(E.g., People v. McDonald,* 62 Ill. 2d 448, 455, 343 N.E.2d 489, 493; *People v. Palmer,* 47 Ill. 2d 289, 296, 265 N.E.2d 627, 631.) For example, such evidence is admissible when it (1) serves to place the defendant in proximity to the time and place of the offense, (2) aids or establishes identity, or (3) tends to prove the design, motive or *knowledge* of the defendant regarding the offense for which he is charged. *(E.g., People v. Manzella,* 56 Ill. 2d 187, 196, 306 N.E.2d 16, 20, *cert. denied,* 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644; *People v. Butler,* 31 Ill. App. 3d 78, 80, 334 N.E.2d 448, 450.) However, the mere fact that such evidence falls within one of these categories does not guarantee its admissibility. Rather, the onus is on the trial court to exercise sound discretion and balance the probative value of such evidence in light of the issues and other evidence available to the prosecution against the prejudicial effect of its admission upon the jury. *E.g., People v. Henenberg,* 37 Ill. App. 3d 464, 468, 346 N.E.2d 11, 15; *People v. Bolton,* 35 Ill. App. 3d 965, 972, 343 N.E.2d 190, 196.

■■ Applying these legal precepts to the case at bar, it is apparent that the probative value of the police officers' testimony is so substantial that it eradicates any possibility that the jury verdict was based on the defendant's bad character instead of his guilt or innocence concerning the offense for which he was charged. Analogous to prior adjudications involving the same problem *(e.g., People v. Wilson,* 46 Ill. 2d 376, 263 N.E.2d 856; *People v. Galloway,* 28 Ill. 2d 355, 192 N.E.2d 370), one of the main issues at trial was whether the defendant had any knowledge of the heroin contained in the paper bag that the police officers found in his store. In responding to this question in the negative, the defendant maintained that an individual named Salvadore left the package at his store and informed him that someone would call for it. Moreover, he related that since he did not gaze inside the package, he was not cognizant that it contained 1.3 pounds of heroin. However, while the above mentioned testimony elicited from Sergeant McKelvey and Investigator Brown could give rise to the inference that the defendant was engaged in

the sale of narcotics, it more importantly demonstrated the defendant's knowledge, motive and intent to possess narcotics in violation of section 402(a) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)). As revealed in the record, these police officers did not testify as to any conclusions to be drawn from their observations. Rather, they merely recounted what transpired in the jewelry store between the defendant and several individuals who they personally knew as a result of their narcotics activities as police officers. Based on such reasoning, we therefore conclude that the respective police officers' testimony was relevant to a central issue in the instant case and the trial court did not abuse its discretion in admitting such information.

The defendant's final contention is that the State's closing argument was prejudicially improper since it (1) insinuated improprieties on the part of defense counsel and (2) commented on facts that were not proved by the evidence. With regard to the first alleged prejudicial statement, the defendant maintains that the following oration by the State, concerning the defendant's denial at trial that he purportedly stated at the time of his arrest that if he got out of this he would not sell dope again, implied that defense counsel was engaging in improper tactics, including the subornation of perjury in order to obtain an acquittal for the defendant:

"Now, later on, after he had had opportunity to plan his defense, speak to the attorney and now, * * * he doesn't have any remembrance of it."

As far as the other controverted closing remarks are concerned, the defendant argues that the State's comments relating to the defendant's other criminal activities was prejudicially improper because there is an absence of evidence showing that he engaged in the sale of heroin. While the defendant proffers various adjudications in support of these assertions, we do not believe that the State's closing argument prejudiced the defendant so as to merit a reversal of his conviction.

It is well recognized in the State that errors which are made by way of improper comment during closing argument but which are not objected to are deemed to be waived unless such comments prevent the defendant from receiving a fair trial. *(E.g., People v. Weaver,* 8 Ill. App. 3d 299, 307, 290 N.E.2d 691, 696; *People v. Weaver,* 7 Ill. App. 3d 1104, 1106, 288 N.E.2d 669, 671.) This latter aspect of the above tenet has more commonly been referred to as the "plain error" doctrine (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)) and is intended to ameliorate the harshness of the strict application of the general waiver rule so as to permit a reviewing court to take notice of errors appearing on the record which deprive the accused of substantial means of enjoying a fair trial and, in criminal cases in which the evidence is closely balanced, to permit the court to consider errors that have not been properly preserved. *(E.g., People v. Howell,* 60

Ill. 2d 117, 121, 124 N.E.2d 403, 405; *People v. Rogers,* 31 Ill. App. 3d 981, 986-87, 335 N.E.2d 48, 53.) However, it is important to note that the "plain error" doctrine does not require that a reviewing court consider all errors involving substantial rights which have not been brought to the trial court's attention. *(E.g., People v. Pickett,* 54 Ill. 2d 280, 282, 296 N.E.2d 856, 858; *People v. Johnson,* 28 Ill. App. 3d 139, 144, 327 N.E.2d 535, 539.) Rather, a reviewing court's exercise of authority to notice plain error is discretionary and depends on (1) the closeness of the case, (2) the conduct of the trial judge, (3) the extent to which the error may have contributed to the verdict, and (4) the magnitude of the errors alleged. *E.g., People v. Doss,* 26 Ill. App. 3d 1, 15, 324 N.E.2d 210, 220; *People v. Robinson,* 20 Ill. App. 3d 777, 783, 314 N.E.2d 585, 590.

■■ Since it is uncontroverted that the defendant did not object to the State's closing argument in his post-trial motion for a new trial, we are of the opinion that any error was waived since the disputed closing statements were not so unduly prejudicial as to deny him a fair trial. With reference to the initial controverted remarks made by the State, we are of the belief that the prosecutor's comments were directed toward the credibility of the defendant's testimony and did not imply that defense counsel was using improper or devious procedures to obtain an acquittal. As the record evinced, there was a disparity in the defendant's testimony at his preliminary hearing and at his trial one year later concerning whether he made the incriminating statement at the time of his arrest. While the defendant unequivocally denied at trial that he told the police officers that if he ever got out of this, he would never sell dope again, it was brought out on cross-examination by the State that at the preliminary hearing, the defendant admitted making the statement. We therefore believe that even though the defendant was unable to recall this admission at trial, the record amply demonstrates that the above cited closing argument made by the State was a fair comment upon the evidence concerning the inconsistency in the defendant's testimony and not a personal attack on the conduct of defense counsel.

■■ We also find that the defendant's second chastisement of the State's closing argument does not warrant the institution of the "plain error" doctrine. This challenge stems from the prosecutor's statement that in order to obtain a search warrant, Investigator Brown, who had already conversed with an individual regarding narcotics, had to provide information that the narcotics, which were floating around the neighborhood at bar, emanated from the defendant's store. While the defendant castigates such reference as being based on facts not proved by the evidence, we feel that the defendant was not prejudiced since it has generally been held that when a trial court sustains an objection to a statement made by the prosecutor in closing argument and instructs the

jury to disregard said remark, any error in such argument is cured. *(People v. Hamilton,* 27 Ill. App. 3d 249, 254, 327 N.E.2d 35, 39-40; see *People v. Miller,* 27 Ill. App. 3d 788, 792, 327 N.E.2d 253, 256.) As the record indicates, when the prosecutor made the above statement, the trial court not only sustained the defendant's objection to such remark, but also informed the jury to disregard that which is not evidence. Moreover, in contradistinction to the cases relied on by the defendant wherein the above general rule was not followed, the instant case does not involve a factual situation where the prosecutor (1) rendered an opinion concerning the defendant's guilt during the course of the trial *(People v. Rothe,* 358 Ill. 52, 192 N.E. 777; *People v. Thomas,* 22 Ill. App. 3d 854, 318 N.E.2d 342), (2) misstated important evidence *(People v. McMillan,* 130 Ill. App. 2d 633, 264 N.E.2d 554), or (3) commented on evidence that was completely extraneous to the case at bar. *(People v. Brown,* 3 Ill. App. 3d 1022, 279 N.E.2d 765.) Further, even assuming *arguendo* that the trial court did not sustain the defendant's objection to the prosecutor's closing remark, we believe that in light of the abundance of testimony evincing the defendant's guilt, such comment was not a material factor in the jury's determination that the defendant violated section 402(a) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)). We therefore conclude that the prosecutor's closing remark regarding Investigator Brown's observations as to what must be shown before a search warrant could be obtained was not of such magnitude to constitute reversible error.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.