THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ISAAC THOMAS, JUNIOR, Defendant-Appellant.

(No. 59096;

First District (4th Division)—September 25, 1974.

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. The defendant was found guilty of murder and sentenced to a term of 35 to 60 years in the Illinois State Penitentiary.

The issues presented on appeal are (1) whether the prosecutor's reference to the defendant as a "criminal" constituted prejudicial error; (2) whether the State's comment on the defendant's failure to produce certain alibi witnesses, when combined with the prior reference to defendant as a criminal, constituted prejudicial error; (3) whether the trial court erred in denying defendant's motion to suppress his statement made to the police; (4) whether the identification of the defendant was sufficient to prove him guilty beyond a reasonable doubt; and (5) whether the defendant's sentence was excessive.

In the early morning hours of April 11, 1971, Mr. Alexander Dumas, Jr., the owner of Dumas Liquors, was shot as he waited on customers in his store. Mr. Dumas died as a result of the shooting. A few minutes before the shooting occurred, Miss Karen Hodge passed by a man entering the store as she was leaving. Miss Hodge was able to observe the man for 5 to 6 seconds. After she had walked a few feet down the street, Miss Hodge heard a shot. She turned and saw the same man running out of the store with a gun in his hand. Based on these two observations, Miss Hodge identified the defendant, Isaac Thomas, Jr., as the man she saw entering Dumas Liquors as she was leaving, and as the man she saw a few seconds later running out of the store.

On May 16, 1971, Miss Hodge was riding in a police car with Officers Donald Bullington and Robert Dudak, in an attempt to locate the defendant. Miss Hodge spotted the defendant and indicated to the police officers he was the man who killed Alexander Dumas. The officers immediately stopped the defendant and arrested him. He was placed in the squad car until a police squadrol arrived and transported him to Area Headquarters. At the police station defendant was questioned and he subsequently gave the police a statement regarding his whereabouts on April 11, 1971.

On June 21, 1972, a pre-trial hearing was held on defendant's motion to suppress the statement given to the police. Officer Bullington testified that prior to questioning the defendant at Area Headquarters he fully informed the defendant of his constitutional rights, and the defendant acknowledged that he understood those rights. Officer Bullington further

testified that he was the first policeman to enter the interrogation room where defendant had been placed. Officer Dudak subsequently entered the room and remained there with the defendant for 5 or 10 minutes after Bullington left. Officer Bullington stated that to his knowledge no one else entered the room during the questioning of defendant. Officer Dudak was not present at the pre-trial hearing.

The defendant testified at the hearing that Officer Dudak was the only police officer who obtained a statement from him. The defendant stated he was not informed of his constitutional rights until after he had made his statement. The defendant also testified that when Officer Dudak first entered the interrogation room he took the defendant's billfold, looked through it, and then left the room. At that time, another policeman, not Officer Bullington, came into the room and told the defendant: "Boy, you know you could get the electric chair for what you did." The officer subsequently poked the defendant in the face when the defendant refused to tell him what his name was. When Officer Dudak returned to the interrogation room, defendant made a statement regarding his whereabouts on April 11, 1971.

Defense counsel moved that defendant's statement to the police be suppressed, on the ground that the State, in not calling Officer Dudak to testify, failed to produce a material witness. Defendant's motion was denied by the trial court.

During the actual trial, Officer Bullington testified that after arresting the defendant he proceeded to defendant's home where he recovered two photographs of the defendant. When counsel for the defendant inquired whether the defendant consented to the search, the assistant State's Attorney stated in the presence of the jury that "this officer does not have to ask a criminal permission for anything." Defendant moved for a mistrial but his motion was denied. The State then rested its case.

Willie Thomas, Isaac Thomas' younger brother, testified he and his cousin, Isaac Foster, and Robert Leonard were with the defendant on the night of April 10, 1971. In the closing argument by the State, the assistant State's Attorney commented on defendant's failure to call Isaac Foster and Robert Leonard as alibi witnesses. The jury subsequently returned a verdict of guilty as charged, and defendant was sentenced to a term of 35 to 60 years in prison.

The defendant first contends the prosecutor's reference to defendant as a "criminal" during the course of the trial constituted prejudicial error. Defense counsel, during cross-examination of Officer Bullington, was informed that the officer made a warrantless search of defendant's premises after his arrest. Defense counsel then inquired of Officer Bullington

whether he had asked the defendant's permission to search his home. At this point the assistant State's Attorney interjected: "Objection, your Honor. This officer doesn't have to ask a criminal permission for anything."

■■ The prosecutor's remark was improper and highly prejudicial. The defendant had no prior record and had not yet presented his defense. The reference to defendant as a criminal, before he had presented his own case, irretrievably prejudiced him in the minds of the jury as a man with a prior record, more likely than others to commit the instant offense. It is clearly reversible error for a prosecutor to suggest to a jury that a defendant has committed other offenses unrelated to the one for which he is being tried, even when the jury is instructed to disregard the comment. (*People v. Brown* (1972), 3 Ill.App.3d 1022.) In no event may a prosecutor comment on facts which are not in evidence, nor may he inject into the case, in argument or otherwise, extraneous and inflammatory material. (*People v. Donaldson* (1956), 8 Ill.2d 510.) Although the jury was instructed by the court to disregard the word "criminal," the prejudicial effect of the statement could not be eradicated. As stated in *People v. Deal* (1934), 357 Ill. 634, the prejudicial effect of an improper statement may not always be wiped from the minds of the jurors by an instruction or retraction. Further, the State's reference to the defendant as a criminal indicated to the jury the prosecutor's personal belief in the guilt of the defendant. It is well settled that it is improper for a prosecuting attorney to state his own individual opinion or belief of the defendant's guilt. *People v. Hopkins* (1970), 124 Ill.App.2d 415.

■■ The defendant secondly contends the State's comment on the defendant's failure to produce certain alibi witnesses, when combined with the reference to defendant as a criminal, constituted prejudicial error. The defendant testified at trial that he and his brother, Willie Thomas, along with Isaac Foster and Robert Leonard, had been drinking together in Annette's Lounge at the time of the shooting on April 11, 1971. Willie Thomas corroborated this testimony at trial, but Foster and Leonard, both of whom were enlisted in the Navy, were not present at the trial to testify. The State knew or should have known that these men were on Naval duty at the time of the trial. In the State's closing argument, the assistant State's Attorney commented:

> "Let's talk about the alibi, because that is what it is. That is what it is called in law, an alibi * * *. Now I don't know where the defendant's cousin [Isaac Foster] and Robert Leonard were. I do know that the defendant has no burden to call them.

The defense is under no burden to present any evidence under the law, but I do know that of that group there was only one person that really would have been impartial, really would have been fair and that was Robert Leonard. And I do know that he did not testify."

Such comment by the State on defendant's failure to produce all his alibi witnesses was highly prejudicial. It created the inference these men were not called because they would not support the defendant's alibi defense. It is a well recognized principle of law that the prosecution's argument to a jury which comments on the defendant's failure to call witnesses on his own behalf is improper and prejudicial. (*People v. Moore* (1972), 9 Ill.App.3d 231.) The comment by the State on defendant's failure to produce alibi witnesses, when combined with the State's prior reference to defendant as a criminal, in effect shifted the burden of proof onto the defendant to establish his innocence. Such conduct amounts to reversible error.

Defendant next contends the trial court erred in denying defendant's motion to suppress an involuntary statement. Defense counsel moved the statement be suppressed on the ground that Officer Robert Dudak, one of the arresting officers in the case, did not testify at the pre-trial hearing. The State informed the court that Officer Dudak was on vacation in Florida at the time of the hearing.

■■ When the voluntary nature of a confession is brought into question by a motion to suppress, the State must produce all material witnesses connected with the taking of the statements or explain their absence. (*People v. Armstrong* (1972), 51 Ill.2d 471.) In *Armstrong*, as in the case at bar, the State failed to produce an interrogating officer and explained his absence by stating he was on vacation. The supreme court held in *Armstrong*, and we agree, that the State had failed to meet its burden of producing all witnesses material to the making of the statements or explaining their absence. As stated in *People v. Wright* (1962), 24 Ill.2d 88, 92, "[t]he burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced." Officer Dudak's testimony at the hearing in the instant case was just as necessary as the missing testimony in *Armstrong*, and because his vacation will not excuse his absence, the State failed to sustain its burden of proving voluntariness, and the defendant's statement should have been suppressed.

■■ For the reasons stated herein, the judgment of the Circuit Court of Cook County is reversed and remanded for a new trial. The question of defendant's identification is a matter of credibility of the wit-

nesses and can be determined by the jury in a new trial. Likewise, we need not consider the defendant's sentence.

Reversed and remanded.

ADESKO, P. J., and BURMAN, J., concur.