THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL MYLES, Defendant-Appellant.

(No. 74-42;

Second District (1st Division)—July 30, 1975.

*Opinion modified upon denial of rehearing filed September 11, 1975.*

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Peter J. Woods, State's Attorney, of Oregon (Bruce Wellman, Assistant State's Attorney, and James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant appeals from a judgment of conviction for the offense of deviate sexual assault (Ill. Rev. Stat. 1973, ch. 38, par. 11—3), entered after a jury trial, and from his sentence of 10-30 years' imprisonment. He contends that he was not proved guilty beyond a reasonable doubt and, alternatively, that the sentence was excessive.

The defendant was charged with committing the sexual assault on a 16-year-old male. The only testimony as to the acts charged was that

of the complaining witness. He testified that at about 3 p.m. on July 2, 1973, on the main street of Rochelle he met the 39-year-old defendant, whom he had known only casually for 2 to 3 weeks. In the course of a friendly conversation, Myes asked the witness whether he drank liquor or smoked marijuana. The witness said he had given up both some weeks before. Myles asked him if he wanted some beer. The witness first said he did not, but on further request did not object.

The young man testified that Myles then gave him the key to his apartment, told him he would get some beer and meet him there later. On the way the witness met a friend who asked him what he was doing and he responded that he was going to a "dude's house" but gave no further details. When the witness arrived at the apartment he entered by a side entrance, one he had used before when a friend had lived in the same apartment, and which did not require him to pass the landlord's apartment.

Myles lived in an 8-by-10-foot room on the ground floor. While waiting for Myles the witness said he sat on the bed and had decided to leave when the defendant arrived, carrying a six-pack of beer. Myles locked the door behind him, then offered the witness a beer which he accepted. According to the witness defendant seemed to be intoxicated. They conversed generally and both agreed it was hot in the room. Defendant took off his shirt and although the witness said he told defendant it was not necessary, defendant began to unbutton the complaining witness's shirt.

The witness said he pushed Myles' hand away and told him it was time to meet his girl friend, but the defendant said he had not bought the beer for nothing. The young man testified that then the defendant was slapping him and arguing with him but up to this point had not threatened him.

When the boy began to rise from the bed to leave, however, the witness said that he was slapped by Myles and pushed against the dresser; that when he again attempted to leave Myles proceeded to choke him and to lower the window shade. Myles then made suggestive remarks about the witness's body. The young man said he then first became afraid and again attempted to leave but that the defendant "slugged" him on the head, slapped him in the face and pushed him on the bed. At some point defendant removed the witness's clothes and undressed himself.

The witness further testified that the defendant forced him to drink beer, hitting him when he stopped so that he eventually became intoxicated during his 5-hour stay.

The complaining witness testified that he objected to the homosexual conduct at various times. He also testified that defendant said that he would kill him. On direct examination he said that Myles showed him a knife, but on cross-examination stated that he had not seen a blade and "couldn't say for sure if it really was a knife, but it looked like one."

The young man was finally allowed to leave but he said that defendant insisted that he go out the window because the landlord's door was open. He then went to a pool hall to talk to some friends about beating up the defendant. On the advice of one of his friends he went to the police station some 15 or 20 minutes after leaving Myles' room to report the incident.

The boy said he did not scream at any time because the defendant was too strong and had too much knowledge of fighting. The evidence showed that defendant's weight was estimated at 180 pounds while the witness weighed 130.

The boy's father said that he went to the police station and observed that his son had four or five bruises on his back and some marks on his neck which he had not seen the previous morning. The police officer testified that he saw red and inflamed markings on both sides of the boy's neck.

Defendant argues that no criminal offense arises from the consensual acts, and that the evidence is insufficient to prove that the sexual acts were due solely to force or threat of force. To support his argument that the record is not sufficient to show force or threat of force defendant places reliance on the circumstances that the boy went to defendant's apartment willingly, did not disclose his purpose to the friend he met on the way and entered by a side door to avoid discovery by the landlord. Defendant also emphasizes that the complaining witness was aware that help was only a short distance down the corridor but did not call out or attempt to escape by a window which faced the outside of the building on the first floor; that the boy did not object when defendant entered the room and locked the door; that he did not resist physically to any extent even in the first 5 minutes and thereafter did not resist at all. Defendant also notes that no reference was made to a knife until after the complaining witness had already performed an act of fellatio with the defendant. Defendant also argues that the absence of significant bruises on the witness's head and face, the fact that there was no physical evidence of damage to the small apartment or to the boy's clothes, and the fact that the bruises found on defendant could have been suffered in the exit from the apartment consistent with his testimony that he injured his back at that time, shows a failure of corrobora-

tion of his testimony as to the extent of the blows he said he received. Defendant also notes that the complaining witness did not go to the police directly and report the incident but first sought out his friends.

Defendant cites various authorities in which convictions were reversed for what he considers similar failures of proof. *E.g., People v. Mueller* (1973), 54 Ill.2d 189; *People v. Qualls* (1961), 21 Ill.2d 252; *People v. Faulisi* (1962), 25 Ill.2d 457; *People v. Taylor* (1971), 48 Ill.2d 91; *People v. Scott* (1950), 407 Ill. 301; *People v. Adams* (1969), 115 Ill.App.2d 360; *People v. Bruno* (1969), 110 Ill.App.2d 219.

The State responds that there was sufficient evidence of resistance from which the jury could have properly found defendant guilty of the acts charged beyond a reasonable doubt. The State argues that the boy at all times after he perceived defendant's intentions sought to leave and was prevented from doing so by physical force and threats of great harm. And that corroboration is found in the fact that the complaint was lodged within 15 or 20 minutes after the assault and by the presence of the bruises on the boy's neck and back. It argues that the failure to cry out does not negate the sufficiency of the evidence when the failure is due to fear of violence. Defendant's cases are distinguished on their facts except for *People v. Bruno*, which it argues in fact supports the conviction. The State argues that *People v. Lilly* (1972), 9 Ill.App.3d 46, reversed in part on other grounds in 56 Ill.2d 493, *People v. Sims* (1972), 5 Ill.App.3d 727; and *People v. Pointer* (1972), 6 Ill.App.3d 113, in which convictions were upheld, involve similar circumstances to those before us.

■■ The offense of deviate sexual assault approaches deviate sexual conduct on the theory that, "[c]ompelling another to engage in a deviate sexual act is, as in rape, a unique kind of battery, and as such as deserving of a criminal punishment * * *" and the phrase "force or threat of force" in the statute is "intended to state generally the equivalent of a force requirement in rape." Ill. Ann. Stat. ch. 38, § 11—3, Committee Comments at 369 (Smith-Hurd 1972).

■■ The facts which will establish the essential elements of the offense "will vary as might ages, or places or times", and it is the totality of the record which must be examined with special caution when clandestine sexual acts are charged. (*People v. Pointer* (1972), 6 Ill.App.3d 113, 118.) While the testimony of the complaining witness might arguably appear to lack credibility, there is some corroboration of the testimony of the complaining witness, and we are unable to say that the verdict is so unsatisfactory or insufficient as to raise a reasonable doubt of defendant's guilt. We acknowledge that the case is a close one, but nevertheless we may not substitute our judgment, essentially based on the

credibility of the complaining witness, for that of the trier of fact. We affirm the judgment finding defendant guilty beyond a reasonable doubt of the charged offense.

■■ We are in agreement with defendant's further alternative argument that the sentence is excessive under the total circumstances of the record, having in mind the sentencing policies which have been proclaimed in numerous cases under the Unified Code of Corrections. We reduce defendant's sentence to a term of 4 to 12 years' imprisonment.

As modified, the judgment is affirmed.

Affirmed and sentence modified.

GUILD and HALLETT, JJ., concur.