THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALFRED CHANEY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOBBY CARPENTER, Defendant-Appellant.— THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT McFADDEN, Defendant-Appellant.

Fourth District   Nos. 13320-13322 cons.

Opinion filed May 16, 1977.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellants.

John G. Satter, Jr., State's Attorney, of Pontiac (G. Michael Prall and Marc D. Towler, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendants were indicted on February 22, 1974, for the January 15, 1974, deviate sexual assaults of Gary Zion, a fellow inmate in the Pontiac Correctional Center, a violation of section 11—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 11—3). A motion to dismiss, based on the lack of a speedy trial, was filed on May 20, 1974. Jury trial was held

July 31 through August 2, 1974, and all three defendants were found guilty.

At trial, Gary Zion testified that on January 15, 1974, at approximately 3 p.m., he was talking with defendant Chaney when defendant Carpenter asked the two of them to help him move desks out of cell 815. They agreed and walked down a corridor until they passed cell 815. Zion then dropped back and started walking in the opposite direction. Defendant McFadden grabbed Zion and told him to continue walking in his original direction. Then Zion grabbed hold of the cell bars and yelled for a guard. McFadden and Carpenter eventually pried Zion off the bars with force, beating and threats. They walked Zion further down the hall at which time Zion grabbed the bars again and was pried off. During this incident, Zion was threatened with a shank or sharp piece of knife-like metal, which was hidden by a piece of cloth. Carpenter and McFadden carried Zion into Chaney's cell and a blanket was put over the bars. Zion and McFadden were left alone and Zion called for a guard. McFadden then beat Zion. Carpenter came into the cell and helped McFadden disrobe Zion. At this point, McFadden anally raped the victim. Chaney then entered the cell and McFadden left, locking the cell as he went. Chaney then anally raped Zion. Chaney then told Zion to get under the bed, called a guard, and the door was opened by the guard, allowing Chaney to depart. The guard left and soon returned, noticing Zion in the cell. After leaving the cell and walking around the corner with Chaney still two feet away, Zion told the guard of the event. The guard then helped Zion wash up and took him to the prison infirmary. Zion positively identified the defendants at trial and the day after the incident, although he was unable to identify McFadden or Carpenter in a photo lineup held a few hours after the incident.

Officer Stephen Hallock, a prison guard, testified that at approximately 3:45 p.m. on January 15, he opened Chaney's cell and noticed Zion getting up. Zion had been crying, had blood on his face and appeared shaken up. When Hallock asked Zion what happened, Zion related the offense.

Defendant Carpenter testified that he did not know McFadden or Zion on January 15, 1974, nor did he observe any sexual activity involving the other defendants and Zion. Chaney admitted that he was acquainted with Carpenter, McFadden and Zion at the time, and that Zion was in the business of selling sex. Carpenter testified that he had had voluntary sexual relations with Zion on prior occasions. Chaney admitted having sex with Zion on January 15, but maintained that it was without force or coercion of any sort. McFadden testified that Zion had offered to have sex with him in exchange for 15 packs of cigarettes. According to McFadden, he gave Zion the cigarettes and met him at Chaney's cell where they had sex.

Several witnesses testified to Zion's sexual activity in jail. Charles Heard, an inmate, testified that Zion had a reputation as a homosexual or bisexual, while inmate Michael Scott testified that Zion had a reputation for having sex with other inmates. Both Heard and Scott had known the defendant for several years. Cecil Clausen, an assistant warden at the Vandalia Correctional Center, where Zion had been transferred from and returned to, testified over defense objection to Zion's good reputation for chastity.

The jury then returned verdicts against all three defendants. Chaney was sentenced to a 10- to 30-year term of imprisonment, to be served consecutive to the sentence he was then serving; Carpenter was sentenced to 10 to 40 years, to run consecutive with the sentence he had been serving; and McFadden was sentenced to 10 to 50 years to be served consecutive to the sentence he was then serving.

Defendants' first contention of error involves their claim that they were denied a speedy trial and that their motions for discharge should have been granted pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5). Defendants argue that they were in custody for purposes of starting the 120-day term when they were placed in segregation. The State stipulates that defendants were tried more than 120 days after defendants were placed in the segregation unit (January 15, 1974, for Chaney; January 16, 1974, for Carpenter and McFadden), but contends that the speedy trial period begins to run on the date of indictment (February 22, 1974). Here, defendants were offered a trial on May 20, 1974, just 87 days after indictment, or 125 and 126 days after defendants were placed in segregation. Hence, the issue was when the 120-day period begins to run.

■■ This issue was discussed in *People v. Smith* (1976), 42 Ill. App. 3d 731, 356 N.E.2d 656, in conjunction with a separate issue of whether already incarcerated defendants are subject to the 160-day speedy trial rule under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1003—8—10) or the 120-day rule (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(a)). We are not faced with that issue and any discussion of it would be irrelevant, since the applicable speedy trial period commences on the date of indictment when the defendant is already incarcerated on unrelated charges. (*Smith.* See also *People v. Arbuckle* (1964), 31 Ill. 2d 163, 201 N.E.2d 102, *cert. denied,* 380 U.S. 945, 13 L. Ed. 2d 964, 85 S. Ct. 1029.) The trial court's ruling denying the motion for discharge was therefore correct.

Second, defendants contend that the prejudicial impact of testimony by medical technician Michael Burke that "[t]he victim also complained of being sexually molested" could not have been eradicated by the court's

instruction to the jury to disregard the remark. The People contend that the judge's instruction to the jury was sufficient to eliminate any prejudice to the defendants.

Defendants' reliance on *People v. Thomas* (1974), 22 Ill. App. 3d 854, 318 N.E.2d 342, is unfounded. In *Thomas,* the alleged prejudicial remark was the prosecutor's reference to the defendant as a "criminal" while here the remark was made by a witness. More in point is *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766, *cert. denied,* 363 U.S. 847, 4 L. Ed. 2d 1730, 80 S. Ct. 1623, which also involved a remark made by a witness. In *Kirkwood,* the complaining witness testified on direct that she identified the defendant from a picture in a book of "known sex offenders." Defense counsel's objection was sustained and the jury instructed to disregard the remark. The supreme court held that while the remark was improper, it was not prejudicial error because it was unresponsive and promptly stricken. Here, the witness' remark was similarly unresponsive, as the record indicates that the State's Attorney was questioning Burke about abrasions on Zion's body, apparent from a visual examination, when Burke volunteered the hearsay statement about Zion being sexually molested. We believe that the identity of the party making the improper remark is the critical difference between *Thomas* and *Kirkwood,* and on that basis we hold that it was not reversible error to strike Burke's hearsay statement and admonish the jury to disregard it.

■■ Third, defendants contend that the trial court erred in failing to strike State rebuttal testimony concerning Zion's reputation for chastity. Cecil Clausen, assistant warden at Vandalia, testified for the State that Zion had a good reputation for chastity. On cross-examination, Clausen admitted that his testimony was based on personal knowledge. Then on re-direct, Clausen testified his opinion was not based on conversations with other people concerning Zion, but was based on other factors besides personal knowledge. Clausen did not elaborate on what those other factors were and defense counsel chose not to re-cross-examine Clausen to pin him down.

Both sides agree that the rule governing reputation testimony is, that to be admissible, the witness' opinion must be based upon contact with the subject's neighbors and associates rather than upon the personal opinion of the witness. (*People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709, *cert. denied,* 356 U.S. 947, 2 L. Ed. 2d 822, 78 S. Ct. 794.) Defendants argue that Clausen's own testimony shows that his opinion was not based upon the required contact with neighbors and associates, but rather was based solely on personal opinion. The State counters by arguing that Clausen's testimony, that his opinion was based on other factors besides his personal opinion, was sufficient to establish a proper foundation for his reputation testimony. In addition, the State cites *People v. Huffman*

(1927), 325 Ill. 334, 156 N.E. 342, for the proposition that reputation testimony is admissible where the witness has not discussed the subject's reputation for chastity with other people. We hold that under *Huffman,* the fact that Clausen, after testifying to the subject's good reputation for chastity, subsequently admitted that he had never discussed Zion's reputation for chastity with other people, does not render Clausen's testimony inadmissible.

■■ Defendants also contend that it was reversible error for the trial court to overrule a defense motion to exclude all witnesses and allow Gary Zion, the complaining witness, to remain in court to hear the State's other witnesses testify before he testified. Defendants maintain that because Zion was not excluded, he was able to hear prior prosecution testimony and remarks of counsel which gave him a better opportunity to make his testimony consistent with that of the other witnesses. Defendants complained that they were prejudiced because Zion's testimony was so critical in this case. The State contends that review of the record shows that Zion testified in conflict with several prosecution witnesses on points on which he could have been consistent had he so desired. This, maintains the State, shows that Zion did not alter his testimony because of what he heard others testify; hence, defendants were not prejudiced because Zion was not excluded.

The general rule here is that exclusion of witnesses is within the sound discretion of the trial judge. (*People v. Strader* (1961), 23 Ill. 2d 13, 177 N.E.2d 126.) A defendant has no absolute right to have witnesses excluded. *People v. Reed* (1928), 333 Ill. 397, 164 N.E. 847.

Defendants rely on *People v. Dixon* (1961), 23 Ill. 2d 136, 177 N.E.2d 206, which, after thoroughly discussing the treatises and authority in other states, reaffirmed the Illinois rule that exclusion of witnesses is discretionary with the trial judge. However, the court went on to say:
> " * * * [A] motion to exclude witnesses should normally be allowed, although it may be proper in a particular case to permit one or more witnesses to remain in the courtroom, as in the *Townsend* and *Reed cases.* In order to uphold the denial of a motion to exclude, the record should disclose a sound basis for such denial. The only reason which the trial judge assigned for the denial of the motion in the present case was that he did not 'like to do that.' " 23 Ill. 2d 136, 140, 177 N.E.2d 206, 208.

One year later, the supreme court decided *People v. Mack* (1962), 25 Ill. 2d 416, 185 N.E.2d 154, which discussed *Dixon* and emphasized that in that case the judge's denial of the motion to exclude was arbitrary because he remarked, "I don't like to do that." Unlike in *Dixon,* where no witnesses were excluded, in *Mack,* all were excluded except one police officer who was permitted to remain. The supreme court emphasized in

*Mack* that in *People v. Townsend* (1957), 11 Ill. 2d 30, 141 N.E.2d 729, *cert. denied*, 355 U.S. 850, 2 L. Ed. 2d 60, 78 S. Ct. 76 and *Reed*, it was held proper for one witness to be allowed to remain in the courtroom.

While in *Mack* and *Townsend* the witness allowed to remain was a police officer, the witness in *Reed* was not. In *Reed*, the supreme court considered the substance of the accepted witness' testimony and concluded that there was no prejudice to the defendant because the witness' testimony could not have been affected by that of witnesses who preceded her. *Townsend* also indicated that prejudice to the defendant was a factor to consider in determining whether there was reversible error.

We are persuaded that the record here shows that no prejudice to the defendant resulted in letting Zion remain in the courtroom. Zion's testimony does not substantially overlap that of the State's other witnesses. They testify to events after the alleged attack. Zion is the only prosecution witness with respect to the circumstances of the incident itself. Furthermore, Zion, in fact, did not make his testimony coincide with Michael Burke, who testified prior to Zion. Zion testified that he received a cut inside his mouth during the commission of the offense even though Burke had already testified that at the examination he did not see any visible laceration inside Zion's mouth.

These facts show a lack of prejudice to the defendants. When the defense made the motion, the State's Attorney requested that Zion alone be exempt. The judge then granted the exclusion motion except as to Zion. To hold this to be reversible error would, as the State suggests, come perilously close to holding that defendant may exclude a witness as a matter of right, a position consistently rejected by the Illinois Supreme Court. We hold that there was no abuse of discretion here to exempt Gary Zion from the order.

Defendants also contend that they were not proven guilty beyond a reasonable doubt because Zion's testimony was not clear and convincing and lacked corroboration. By statute, deviate sexual conduct requires proof of "force or threat of force" (Ill. Rev. Stat. 1973, ch. 38, par. 11—3(a)). Here, defendants admitted that the deviate sexual acts occurred but maintained that Zion consented. Hence, the entire case hinges on whether the jury finds that the acts were consensual or with force and against Zion's will.

■■ The testimony of a single witness, if positive and credible, is sufficient to convict a defendant of the offense of deviate sexual conduct, even though the testimony is contradicted by the accused. (*People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367; *People v. Shields* (1973), 9 Ill. App. 3d 682, 295 N.E.2d 153.) Here, Zion's testimony is clear and convincing and is buttressed by some corroborating evidence. Guard

Stephen Hallock testified that he observed Zion in Chaney's cell after the time of the alleged occurrence. Hallock testified that Zion appeared to be getting up, seemed nervous and shaken, had blood on his face, and had been crying. On the way to the cell house to wash up, Zion told Hallock of the offense. In addition, Michael Burke, who examined Zion, testified that Zion had abrasions on his neck.

In *People v. Myles* (1975), 31 Ill. App. 3d 45, 333 N.E.2d 643, there was similar corroborating evidence. The victim lodged a complaint within 15 to 20 minutes after the incident and had bruises on the neck and back. The appellate court held that the evidence was sufficient to convict beyond a reasonable doubt. Here, the evidence was a least as strong as that in *Myles*. We, like the appellate court in *Myles*, recognize this as essentially a case of credibility and refuse to substitute our judgment for that of the jury.

■■ Defendants' final contention of error is that they were improperly sentenced since the court had insufficient information upon which to base the sentences. In the alternative, they argue that the sentences were excessive. Specifically, Carpenter and Chaney's presentence reports are entitled "Program Considerations" and were prepared on July 23 and August 7, 1973, respectively. McFadden's report was entitled "Classification Report" and was prepared October 8, 1971. Each report was filed January 23, 1975, by the Pontiac warden and these were treated by the judge just as if they had been entitled "presentence reports." Substantively, irrespective of their denomination, these reports contained the type of information required to be in the presentence report by statute, *i.e.*, previous delinquency or criminal experience, social background, capabilities, mental, emotional, and physical health, and recommendations for rehabilitation (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—2).

Substance aside, defendants contend that the reports were outdated. We see no merit to this argument since these reports were prepared after each defendant was incarcerated for the offense which he was presently serving at the time this incident occurred. No objection was made to these reports at the sentencing hearing and each defendant was given the opportunity to present evidence in mitigation. Any deficiencies in these reports could have been brought to the attention of the court by the defendants who by their silence and that of their counsel waived any objection to the timeliness of these reports.

With respect to the sentences, defendants claim they were excessive. The State's Attorney had recommended 10 to 30 years for McFadden and Chaney and 20 to 60 for Carpenter. As it turned out, the court sentenced Chaney to 10 to 30 years, Carpenter to 10 to 40 years, and McFadden to 10 to 50 years' imprisonment. Sentencing is a matter of judicial discretion,

not to be disturbed by an appellate court except for abuse of that discretion. (*People v. Bonner* (1967), 37 Ill. 2d 553, 229 N.E.2d 527, *cert. denied,* 392 U.S. 910, 20 L. Ed. 2d 1368, 88 S. Ct. 2067.) In view of the degrading brutality of this crime and defendant's prior convictions of armed robbery and burglary, we cannot say that the 10- to 30-year sentence imposed on defendant Chaney was excessive.

■■ As to defendant Carpenter, evidence was introduced at the sentencing hearing that subsequent to his conviction for this offense, he attempted to have sex with another inmate, Michael Davis. Carpenter was prevented from consummating any relationship with Davis when a third inmate woke up. But Davis testified that Carpenter continued thereafter to threaten him to "do as he said, or else" until Davis was transferred to another floor. We feel that this testimony, coupled with Carpenter's prior record of convictions for burglary twice, auto theft, and criminal damage to property, justify the sentence imposed and tend to indicate that Carpenter's potential for rehabilitation may have been less than Chaney's.

■■ The record indicates that defendant McFadden, at 24, is the youngest of the defendants. He also has the least extensive criminal background, as the record indicates no prior adjudicated record. He was serving 3 to 9 years for aggravated battery at the time of this occurrence. The presentence report indicates, however, that McFadden by his own admission, at age 16, committed an aggravated battery and spent 14 days in jail. The most apparent factor in the presentence report was a long list of prison infractions which indicate that McFadden was insolent, threatened the guards, disobeyed orders, and often refused to abide by the prison rules. We detect nothing in the list of prison infractions which remotely approaches the seriousness of Carpenter's conduct with respect to inmate Davis. The only thing the trial judge said when sentencing McFadden was, "Mr McFadden is a young man who does not have a long record, but does seem to have a lot of problems following the rules and regulations of the institution." This was an obvious reference to defendant's prison infractions and in our opinion was insufficient to warrant 20 years greater maximum term than that of defendant Chaney who had a more serious criminal record. The trial judge emphasized that his primary consideration, due to the nature of the crime, was protection of other people. We have no quarrel with that being the primary consideration, but as such, sentencing McFadden to a 20-year greater maximum term than defendant Chaney was excessive.

For the above stated reasons, the judgment of the circuit court is affirmed and the sentence of defendant Robert McFadden is reduced to 10 to 30 years' imprisonment, while the sentences of Alfred Chaney and Bobby Carpenter are affirmed.

Convictions affirmed. Sentence modified in 13322 and that cause is remanded for issuance of an amended mittimus.

REARDON and MILLS, JJ., concur.