THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSE LEE DILLINGHAM, Defendant-Appellant.

First District (4th Division)    No. 76-1658

Opinion filed July 13, 1978.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin and Brian Silverman, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial in the circuit court of Cook County, defendant, Jesse Lee Dillingham, was found guilty of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4) and sentenced to 1½ to 4½ years in the Illinois State Penitentiary. Defendant contends: (1) the trial court erred in striking the testimony of a defense witness to the effect that the complaining witness had a bad reputation for being a law-abiding citizen, and (2) the trial court abused its discretion in refusing to allow defense counsel the right to utilize a discovery deposition to impeach the testimony of the complaining witness because of defendant's lack of compliance with the discovery rules.

We affirm.

Carlos Godines, the complainant, testified that on December 21, 1974, he attended a Christmas party at a bar called Little Red's for about one hour and 20 minutes. He then went to a bar called The Spot in Calumet City, about a half block from where he resided. Complainant, a painter, received a telephone call from the business agent of his local union. Complainant had left some painting equipment, consisting of safety belts, tie lines, tie ropes and bolts, chairs, rollers and brushes, at defendant's home. He borrowed a car in order to transport the equipment and drove to defendant's residence, although it was less than one block from The Spot. Complainant was not sure of the time when he arrived, but it was in the evening and it could have been as late as 8:30 p.m. He knocked on the door and told defendant he wanted to pick up the equipment that had been left there, but defendant said he did not have it any more because somebody had broken into his house and stolen it. Complainant told defendant this was a lie, and to either call the police or "step outside" because he had to have the equipment. Defendant pushed him away from the door with his left hand and from a range of 4 or 5 feet fired a gun at complainant, hitting him under the right arm and saying, "This is for you." Complainant spun around and defendant fired again, hitting him in the right side. At this time defendant was 15 feet away. Complainant fell down the steps and began to lose consciousness as defendant fired again, hitting him in the upper left chest area. Complainant was taken to a

hospital by police where he underwent surgery and remained for several weeks.

On cross-examination, defense counsel attempted to question complainant by using a deposition he allegedly gave in connection with a civil action on July 1, 1975. When the State objected that it had not received a copy, the court refused to allow counsel to use the deposition. Counsel subsequently attempted to testify to the substance of complainant's deposition testimony, but this was not allowed because counsel was not on the defendant's list of witnesses. Defendant then made an offer of proof that complaint had testified at the deposition that he had four drinks of tequila and Seven-Up at Little Red's, that he drank two Stroh's beers at The Spot tavern and that the time of the shooting was between 10 and 11 p.m.

Under cross-examination, complainant testified that he had three drinks at Little Red's and one drink at The Spot. He ordered two beers at The Spot but never drank them. He did not remember making a statement that he went to defendant's home between 10 and 11 p.m.

Calumet City Police Officer Anthony Licido testified that he and his partner responded to a call of a man shot at approximately 8:43 p.m. on December 21, 1974, and observed complainant lying face down at the bottom of the stairs; blood covered the snow. He did not find a weapon on complainant's person or in the immediate area. And he stated that neither defendant nor his wife told him complainant came to kill defendant, or that the latter took the gun away from complainant and shot him. At this time defendant told this witness he did not know where the gun was but his wife said she saw a hand reach out and grab the gun from her husband.

Betty Dillingham, defendant's wife, testified she saw shadows behind complainant when he came to the door and threatened to kill her husband; defendant replied he did not want any trouble. Complainant then threatened to kill both of them, and she saw her husband grab complainant and heard three shots in succession.

Defendant testified he told complainant when he arrived at 8:30 p.m. that the equipment he was looking for had been taken in a robbery a week earlier. Complainant did not believe him, threatened to kill him and told defendant to come outside. Complainant then stepped up in the door and pulled a gun. Defendant grabbed the gun and started firing, forcing complainant to back out. Defendant did not know what happened to the gun.

Defendant also called Don Wright, who testified that on the date of the shooting he lived next door to defendant. Prior to that time he knew complainant, who lived across the street, and his reputation for being a law-abiding citizen was "not very good." When counsel then asked,

"Now, with reference to his being a violent person, did you know his reputation for violence?" the court cautioned counsel not to lead the witness, saying, "I heard nothing about violent temper unless it's your testimony, and I will strike that." Wright testified he heard some of the argument that evening and heard two or three shots in rapid succession, but did not see the actual shooting. On cross-examination, he testified he had lived next door to defendant for approximately 4 years and defendant was his friend. He based his testimony about complainant's reputation on "hearsay," from people at the bars. He did not know any in particular. This witness related that he heard complainant beat his wife, and he could recall one person that told him but he could not remember who it was. At the conclusion of his testimony, the court struck that part of his testimony concerning "character," stating it was "strictly hearsay" and the witness "gave no basis for it."

■■■ Defendant argues the court should have allowed him to present testimony concerning complainant's reputation as a violent man. Such evidence may be relevant to show the circumstances confronting the defendant at the time of the alleged offense. (*People v. Stombaugh* (1972), 52 Ill. 2d 130, 138-39, 284 N.E.2d 640; *People v. Allen* (1976), 35 Ill. App. 3d 342, 348, 341 N.E.2d 431.) However, the record clearly shows that, as defendant's counsel began inquiring into the complainant's reputation for violence, the court sustained a State objection on the ground that counsel was leading the witness. Thus, the defendant never offered such testimony and the point is without merit.

■■ Moreover, as the State points out, a proper foundation for such testimony was not established. The witness' personal opinion is not admissible and a proper foundation requires that the witness base his testimony on contacts with the persons, neighbors or associates having knowledge of such matters. (*People v. Chaney* (1977), 48 Ill. App. 3d 775, 779, 362 N.E.2d 1375.) Wright's testimony concerning complainant's reputation was not shown to have been based upon his own personal knowledge, but on the word of some other unidentified persons. His testimony concerning complainant's general reputation, therefore, lacked the necessary foundation and was properly excluded. *People v. Wheeler* (1965), 57 Ill. App. 2d 452, 462-63, 206 N.E.2d 727.

■■ Even if the excluded testimony should have been admitted, such error would be harmless. The complainant's testimony was that defendant shot him three times. Defendant first shot from a distance of a few feet. Defendant shot a second time from a range of 15 feet as complainant retreated. Defendant then fired a third shot as complainant fell to the ground at the foot of the stairs. The record clearly demonstrates that any error in this regard did not affect the outcome of the trial. *People v. Limas* (1977), 45 Ill. App. 3d 643, 652, 359 N.E.2d 1194.

■■ Defendant also contends he was denied a fair trial because he was not allowed to use complainant's deposition testimony to impeach him. Although sanctions for the violation of discovery orders are within the discretion of the trial court and defendant's counsel should have tendered a copy of the civil deposition to the State in advance of trial, we consider that the court's refusal to allow defendant to use the deposition was an abuse of discretion. (See *People v. Porter* (1973), 13 Ill. App. 3d 893, 899, 300 N.E.2d 814; *People v. Rayford* (1976), 43 Ill. App. 3d 283, 287-88, 356 N.E.2d 1274.) We do not believe the State would have been prejudiced if the court had granted a short recess to allow the State to become familiar with the deposition.

■■ However, we consider that the error does not require a reversal. Defendant's offer of proof showed the claimed inconsistencies concerned the number of drinks the victim had prior to the incident and the time the incident took place. The testimony of the police officer established the time of the shooting, and the minor difference between the number of drinks complainant consumed before the incident is of little import because intoxication was not at issue at the trial. Thus, even if the civil deposition testimony was admitted and the complainant's testimony had been impeached in these respects, it is evident that these are minor inconsistencies that would not have seriously discredited his testimony. Any error in refusing to allow defendant to use the deposition transcript to impeach complainant's testimony was not sufficient to raise a reasonable doubt of defendant's guilt or to require a new trial. Compare *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208; *People v. Jones* (1973), 13 Ill. App. 3d 684, 687-88, 301 N.E.2d 85.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DIERINGER and ROMITI, JJ., concur.