THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALPHONSO CANET, Defendant-Appellant.

First District (1st Division)   No. 1—89—0502

Opinion filed August 26, 1991.

Marc Davidson, of State Appellate Defender's Office, of Chicago, for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Alphonso Canet was found guilty of possession with intent to deliver more than 15 grams of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401), and he was sentenced to ten years' imprisonment. The defendant appeals both the conviction and sentence.

In his search warrant affidavit, Chicago police officer Michael Plovanich swore to the following facts: On August 27, 1987, he spoke with a confidential informant (CI). The CI told Officer Plovanich that cocaine was being sold from a third-floor apartment at 1351 West Carmen Avenue. Officer Plovanich and the CI formulated a plan whereby the CI would purchase cocaine at 1351 West Carmen. The officer searched the CI for money and contraband, but neither was found. In an undercover vehicle, Officer Plovanich drove the CI to 1351 West Carmen and gave the CI $50. The officer watched the CI walk to and enter the 1351 West Carmen building. The CI entered a third-floor apartment and met with an individual by the name "Alphonso." Alphonso was described as being 28 years old, 5 feet 10 inches tall, 210 pounds, with dark brown hair and brown eyes. After a brief time, the CI exited the building and sat in the car. Then, the CI gave the officer one clear plastic bag containing white powder. The powder tested positive for cocaine.

Based upon Officer Plovanich's affidavit, a search warrant was issued to search the man described above as Alphonso. The search warrant also specified the third-floor apartment at 1351 West Carmen. On August 28, 1987, Officer Plovanich and other officers executed the search warrant and, subsequently, arrested the defendant.

Before trial, defendant moved to quash the search warrant, contending that it lacked probable cause. After the trial court heard arguments, the court heard the defendant's motion and stated "[b]ased upon the totality of the circumstances indicated in the search warrant I think there was sufficient probable cause for the issuance of the search warrant."

Preceding the defendant's trial, the court ruled that the assistant State's Attorney could elicit testimony that the search warrant directed the search of a person named Alphonso and the third-floor apartment at 1351 West Carmen. However, the court would not allow testimony with respect to the substance of the search warrant.

At trial, the assistant State's Attorney referred to a "court-ordered search warrant" five times. The assistant State's Attorney began his opening statement with the following:

"Good police work, a little bit of luck, and a court-ordered search warrant is why we're here today. *** On August 28, 1987, in the afternoon hours Chicago Police Officer Mike Plovanich appeared in court before a judge and obtained a court-ordered search warrant. The search warrant called for the search of a person by the name of Alphonso *** and *** the third floor apartment [at 1351 West Carmen]."

Then, the prosecutor informed the jury that Officer Plovanich would testify that he conducted the search and that, after entering the 1351 West Carmen apartment, the defendant sat in the kitchen. At this time, the prosecutor stated that "[the defendant] was handed a copy of the search warrant, the court-ordered search warrant." After the assistant State's Attorney described the search of the third-floor apartment and described some items that were found, the assistant State's Attorney stated "[g]ood police work, a little bit of luck, and a court-ordered search warrant." Subsequently, when the prosecutor described that cocaine was discovered, he stated "[g]ood police work, a little bit of luck, and a court-ordered search warrant."

Additionally, Officer Plovanich testified that when he, Officers Joseph DiGiacomo and Patrick Feeney arrived at 1351 West Carmen, they went to the building's gangway, where they saw a man who fit the warrant's description.

Officer Plovanich also testified to the following: He approached the man on the gangway, identified himself as a police officer, and asked the man his name. The man said his name was Alphonso Canet. He told the defendant that he had a search warrant for him and the third-floor apartment. Officer Plovanich searched the defendant and found a clear plastic bag containing a white chunky substance in his

coat pocket and a set of keys. Then, he went to the third-floor apartment, sat the defendant in the kitchen and handed him a copy of the search warrant. After the defendant read the search warrant, he said "what your [sic] looking for is in the office" and the defendant pointed toward the rear or middle bedroom. In the room the defendant described as an office, the officer found a triple beam scale, a plastic grinder, two clear plastic bags containing a "white chunky substance," a shoe box that contained two larger clear plastic bags of a "white chunky substance" and a bank statement with the defendant's name on it. The apartment had a living room, dining room, kitchen, bathroom and probably two other bedrooms. In an enclosed porch area, he thought there was a single bed and some children's toys. On cross-examination, Officer Plovanich testified that he thought a child was living in the porch area and that at the time of the search, he knew that other people were living on the premises.

Also during the State's case in chief, Officers DiGiacomo and Feeney testified. Their testimony was substantially similar to Officer Plovanich's testimony.

Additionally, the State called Lori Lewis as a witness. She testified as an expert in forensic science chemistry. She testified to the following: She is employed as a forensic science chemist by the Chicago police department. She identified the bags of the "white chunky substance" as cocaine. She determined that the cocaine that was found on the defendant weighed 8.59 grams and that the cocaine found in the apartment's "office" weighed 255.86 grams.

The State also called two other witnesses who testified that the Community Bank of Edgewater's and the Peoples Gas' records indicated that the defendant resided at 1351 West Carmen.

Thereafter, the defense called Martin Delboccio. He testified: He lives at 1351 West Carmen. Five people lived in the third-floor apartment, Delboccio, the defendant, Roger Hayes, Bernadette Fairchild and John Gomez. Usually, Gomez would sleep on the floor because there were only three bedrooms. However, sometimes the defendant stayed in the first-floor apartment with his mother and his 10-year-old brother. There was a sofa bed in the middle bedroom/office. Mrs. Fairchild lived in the middle bedroom/office half of the week. Her clothes were in the bedroom/office. Delboccio lived in the front bedroom and the defendant lived in the rear bedroom. Delboccio's 18-year-old brother and the other individuals who lived at the third floor apartment had keys to the apartment, as did the defendant's mother and brother. After Delboccio testified, the defense and the State rested.

During closing arguments, the prosecutor stated that "Officer Plovanich informed the [d]efendant that he had a court-order[ed] search warrant authorizing the search of his person and his apartment" and that "the [d]efendant sat down in the kitchen, presented with the search warrant, the court authorized search warrant."

After jury deliberations, the defendant was found guilty of possession with intent to deliver more than 15 grams of a controlled substance, and he was sentenced to 10 years' imprisonment. The defendant appeals the conviction and the sentence.

■ Initially, the defendant argues that he was denied a fair trial, contending that (i) the prosecutor's references to the "court-ordered search warrant" in his opening statement and closing argument and (ii) the following colloquy between the prosecutor and Officer Plovanich constituted prejudicial error. In pertinent part, the following were the prosecutor's questions and Officer Plovanich's answers.

"Q. Directing your attention, Officer, to August 28th, 1987, at approximately 2:30 p.m., where were you sir?

A. I was in this building in front of Judge Bailey.

Q. And what was your purpose for being there?

A. Having a search warrant signed.

Q. Did that search warrant contain a description of a person to be searched in a location to be searched?

A. Yes, it did.

Q. What was that description?

A. Male white Hispanic, approximately five, ten, two hundred to two hundred and ten pounds by the name of Alphonso.

Q. Was there a location to be searched?

A. Yes.

Q. And that was indicated on the search warrant?

A. 1351 W. Carmen, third floor."

As support for his argument, the defendant cites *People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368, and *People v. Blissitt* (1973), 12 Ill. App. 3d 551, 299 N.E.2d 562. In *Turner*, the court held that a prosecutor's closing argument was improper and prejudicial because the prosecutor's statement implied that charges would not have been placed against defendant Turner unless the prosecutor thought he was guilty. (*Turner*, 127 Ill. App. 3d at 792.) Similarly, in *Blissitt*, the court held that error occurred when a prosecutor stated that he recommended that the defendant Blisset be charged with murder. (*Blissitt*, 12 Ill. App. 3d at 554.) *Turner* and *Blissitt* do not support the defendant's argument because, in the case at bar, the prosecutor

did not expressly or implicitly convey his opinion to the jury that he believed that the defendant was guilty of the crime charged or comment on what charges should have been filed against the defendant.

We believe that the various references throughout the trial about the issuance of a search warrant were so crucially intertwined with the defendant's arrest as to form part of one chain of relevant circumstances. "It has uniformly been held that evidence concerning acts which are closely and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances is admissible." (*People v. Olivas* (1976), 41 Ill. App. 3d 146, 150, 354 N.E.2d 424.) The testimony elicited concerning the issuance and execution of the search warrant solely demonstrated to the jury the formal procedure required of the law enforcement officials before they could properly (i) search the defendant and the third-floor apartment and (ii) arrest the defendant when the controlled substance was found. Similarly, in *People v. Olivas* (1976), 41 Ill. App. 3d 146, 150, 354 N.E.2d 424, the appellate court held that various references throughout the trial about the issuance of a search warrant were so crucially intertwined with the police officers' surveillance of the premises, as well as defendant's arrest, that they formed part of the chain of relevant circumstances. Moreover, the case at bar is clearly distinguishable from *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, *cert. denied* (1983), 460 U.S. 1040, 75 L. Ed. 2d 792, 103 S. Ct. 1433, and *People v. Okundaye* (1989), 189 Ill. App. 3d 601, 545 N.E.2d 505, *appeal denied* (1990), 129 Ill. 2d 569, 550 N.E.2d 563, because in those cases prosecutors repeatedly related to the jury the confidential informant's hearsay allegations that compromised the grounds for the search warrant. In contrast, during the defendant's trial, the prosecutor did not mention that the CI purchased cocaine from the defendant and did not offer those hearsay allegations into evidence.

■ Additionally, the defendant argues that he was denied a fair trial because the prosecutor's closing argument inflamed the jury's passions and improperly bolstered the police officers' credibility. His argument is based upon the two following passages:

> "It's kind of amazing *** when you look at this *** this looks as harmless as your grandmother's baking soda and powder and sugar. *** It's amazing, it really is. No, it's not, what it is, your [*sic*] looking at something else, your [*sic*] looking at a business, your [*sic*] looking at an industry right now, it's not amazing, it's disgusting, it's disgusting because most of business and most of industry in this country is unlike this, this is

not honest, this is not hard work your [sic] proud of, this is not something that benefits you, this is not something that makes your life better, it's something that ruins your life. It isn't, none of this is about dedication to yourself, respect for yourself, dedication and respect for your work, dedication and respect for the people who benefit from what you do, this is not about any of that, this is about easy money, this is about lying and cheating and doing whatever you can to keep that easy money coming in. There are people who deal in this business and that's how they are and then on the other hand there are people like Officer Plovanich, Officer DiGiacomo [and] Officer Feeney *** who are not like that, it's their job to put those people in this business out of business.

None of those people who supposedly lived in that apartment lived there, Fairchild, yeah, you have Marty [Delboccio] telling you there were women's clothes there and you have officers with over twenty years of experience telling· you there were no women's clothes there, well, you think they're going to come in here and lie to you, you think that they're going to trump this whole thing against Marty [Delboccio]—or against Alphonso [the defendant], they don't even know them."

The defendant's argument, however, is waived because defense counsel did not object to the prosecutor's comments. Even if the argument had not been waived, there was no error. In the first passage, the prosecutor was referring to and "dwelling" upon the evil which results from the defendant's crime. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011, *appeal denied* (1983), 92 Ill. 2d 576.) In the second passage, the prosecutor was arguing that the police officers did not have a motive to lie about the existence of women's clothes in the middle bedroom/office. Thus, we do not believe that the second passage improperly bolstered the police officers' credibility.

In conclusion, the defendant was not denied a fair trial by any one of or any combination of the claimed errors.

Defendant also argues that he was denied effective assistance of counsel when his attorney failed to tender an instruction on possession with intent to deliver less than 15 grams of cocaine when his trial counsel conceded that the defendant was found with 8.59 grams of cocaine in his pocket and argued that the defendant did not control or possess the cocaine that was found in the third-floor apartment. We disagree. As authority for his argument, defendant cites *United States ex rel. Barnard v. Lane* (7th Cir. 1987), 819 F.2d 798, in which the Seventh Circuit reversed the Illinois Supreme Court's prior deci-

sion in *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005. The Seventh Circuit held that trial counsel's failure to tender instructions of justification and manslaughter instructions, in the face of the jury's clear reluctance to return a guilty verdict on a murder charge, constituted ineffective assistance of counsel. Apparently, the Seventh Circuit was persuaded that the defendant was denied effective counsel under the sixth amendment, because the jury appeared to be confused. The Seventh Circuit noted that "after deliberating for a little more than three hours, the jury sent three questions to the court" and "four-and-a-half hours later the jury reported that they were deadlocked." (*United States ex rel. Barnard v. Lane* (7th Cir. 1987), 819 F.2d 798, 804.) However, we are not bound to follow the Seventh Circuit's decision.

We agree with the Illinois Supreme Court's earlier decision in *Barnard*. (*People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) The Illinois Supreme Court held that jury confusion was the defense attorney's strategy. Before the writ was granted, the Illinois Supreme Court found that defendant's trial counsel's failure to tender manslaughter instructions was a tactical decision. The defendant's trial counsel's strategy was to present the jury with only the option of finding the defendant guilty or not guilty and not to give the jury an opportunity to compromise by finding the defendant guilty of manslaughter. (*People v. Barnard*, 104 Ill. 2d at 237.) The Illinois Supreme Court elected *not* to enunciate a *per se* rule that the failure to tender instructions on a lesser included offense constituted ineffective assistance of counsel.

■ Moreover, in *People v. Maxwell* (1980), 89 Ill. App. 3d 1101, 413 N.E.2d 95 (where the defendant was convicted of indecent liberties with a child), the Illinois Appellate Court held that defense counsel's failure to request jury instructions on the lesser included offense was a tactical decision lying properly within the trial counsel's province and, thus, did not constitute ineffectiveness. Therefore, in the case at bar, we find that the defendant was not denied effective assistance of counsel because defense counsel failed to tender instructions on the lesser included offense. The defendant was charged with possession of over 15 grams and, throughout the trial, the defense counsel's strategy was to prove that the defendant did not have knowledge or possession of more than 15 grams. Thus, the defense attorney was hoping for an acquittal and not tendering instructions on a lesser included offense was a tactical decision.

■ Defendant also argues that the trial court abused its discretion when it sentenced him to 10 years' imprisonment, contending

that the court improperly considered, as aggravating factors, (i) that the defendant's conduct caused or threatened serious harm and (ii) that the defendant received monetary compensation for committing the offense. As support for his argument, the defendant relies upon the prosecutor's and the trial court's comments that were made at the defendant's sentencing hearing. In pertinent part, the prosecutor stated:

> "I point out in aggravation, Judge, Chapter 38 section 1005—5—3.2 subparagraph 1; defendant's conduct caused or threatened serious harm. Judge, everyone knows the inherent danger of drugs especially cocaine and the serious effect of crime [on] society today. I also point out as to subparagraph seven in that same section, that the sentence is necessary to deter others from committing the same crime. Judge to be quite frank, I submit we are losing the war on drugs today. And the reason we are losing the war [sic] the profits that are made in drugs today. You have heard from the evidence in this case *** [that] there is a lot of money to be made out there. In order to deter people like this defendant from going out and committing crimes like this the penalties should be strictly enforced and severely imposed."

In sentencing the defendant, the trial court stated:

> "There is absolutely no question in our mind that you were in the business of possessing controlled substances for sale. That you were in the business of selling cocaine. *** [T]he legislature *** has [set] *** certain guidelines[ ] [and] [w]e consider those guidelines. We consider the facts of the case, and we sentence you, sir, to the Illinois Department of Corrections for a period of ten years, and we impose a fine of thirty thousand dollars."

The trial court did not abuse its discretion. The trial court did not rely upon and incorporate the prosecutor's comments. See *People v. Glass* (1981), 98 Ill. App. 3d 641, 424 N.E.2d 936.

■ Additionally, the defendant argues that the trial court abused its discretion when sentencing him because the court failed to consider that he did not have a prior conviction. We disagree. "[W]here mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary." (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109, 458 N.E.2d 1370.) Thus, the trial court acted within the scope of its discretion when it sentenced the defendant to 10 years' imprisonment.

■ Additionally, the defendant argues that the trial court erroneously denied his motion to suppress his statement, "what you are looking for is in the office," contending that he made the statement before he received his *Miranda* warning and that he was prejudiced when the statement was allowed into evidence. We disagree. After determining that the defendant was not subject to a custodial interrogation, the trial court properly denied the defendant's motion. *Miranda* warnings are only compulsory when a suspect is in custody and subject to an interrogation, where such interrogation is a measure of compulsion above and beyond that inherent in custody itself. (*People v. Winchel* (1987), 159 Ill. App. 3d 892, 909, 512 N.E.2d 1298, *appeal denied* (1987), 117 Ill. 2d 552, 517 N.E.2d 1094.) The defendant simply was not being interrogated when Officer Plovanich handed him a search warrant. The defendant was searched and taken into custody, but he was not asked any questions nor was he compelled or coerced into making a statement. The police merely showed the defendant the search warrant to communicate that the search was authorized.

■ Defendant argues that the trial court's determination not to quash the search warrant was manifestly erroneous, because Officer Plovanich's warrant affidavit lacked probable cause. Specifically, the defendant contends that Officer Plovanich's affidavit does not establish that the CI was credible and reliable. We disagree. The trial court properly considered the "totality of the circumstances" when it determined that there was probable cause to issue the search warrant. (*People v. Tisler* (1984), 103 Ill. 2d 226, 238, 469 N.E.2d 147; *Illinois v. Gates* (1983), 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 543-44, 103 S. Ct. 2317, 2328.) "It is the probability of criminal activity, not proof of the crime beyond a reasonable doubt, which is the standard for determining whether probable cause is present." (*People v. Waddell* (1989), 190 Ill. App. 3d 914, 922, 546 N.E.2d 1068, *appeal denied* (1990), 131 Ill. 2d 566, 553 N.E.2d 401.) The police officer need not have personally observed the facts forming the basis of probable cause. His statements may be based on hearsay, such as an informant's tip. An informant's tip becomes reliable when independent police investigation corroborates some of the tip's details. (*Waddell*, 190 Ill. App. 3d at 923.) The trial court's finding of probable cause was not manifestly erroneous because Officer Plovanich corroborated portions of the CI's accusations which, in this case, provided an adequate basis for crediting the hearsay information. (See, *e.g., People v. Morrison* (1988), 178 Ill. App. 3d 76, 83, 532 N.E.2d 1077, *appeal denied* (1989), 126 Ill. 2d 564, 541 N.E.2d 1112 (an officer's warrant affidavit contained sufficient facts to support a finding of probable cause where

the officer stated that he gave an individual money, watched that individual enter a residence and saw the individual return with cocaine); see also *People v. Friend* (1988), 177 Ill. App. 3d 1002, 1019, 533 N.E.2d 409, *appeal denied* (1989), 126 Ill. 2d 563, 541 N.E.2d 1110.) The CI's information was corroborated because Officer Plovanich swore that prior to driving the CI to 1351 West Carmen, he searched the CI for money and contraband, but neither was found; that he drove the CI to 1351 West Carmen and gave the CI $50; that the officer watched the CI walk to and enter the 1351 West Carmen building; and that after a brief time, the CI exited the building with a bag containing cocaine.

Based upon the foregoing, the defendant's conviction and sentence are affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.